**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRANCIS BATTISTA,<br>CRYSTAL BATTISTA,<br>               Plaintiffs,<br>   vs.<br><br>ADVANCED FINANCIAL SERVICE LLC,<br>CARVANA, LLC,<br>BRIDGECREST CREDIT COMPANY, LLC,<br>COUNTY OF DELAWARE,<br>MICHAEL HILL,<br>MARK MICHAELS,<br>DENNIS KILLIAN,<br>MICHAEL WILEY,<br>JOHN DOE OFFICERS 1–5,<br>               Defendants. | CIVIL ACTION<br><br><br><br>NO. 21-12979-JHR-SAK |

**AMENDED COMPLAINT**

## I.   INTRODUCTION

1.     This is an action involving a wrongful conversion of a family minivan by use of intimidation and threats of violence, supported by threats of arrest by armed law enforcement. Plaintiffs authorized payment for their minivan in full, without any financing, and at no point was there any lien on the minivan that would allow for an *ex parte* taking.

2.     A secured party, which there is none in this case, may only use the remedy of self-help repossession of collateral after default if it does so without breaching the peace. Under settled Third Circuit decisions, a uniformed police officer may not assist a private party's civil repossession absent an order issued by the court, which all defendants confirmed there was no order by the court. To do otherwise constitutes a breach of the peace.

3.     Nonetheless, over one (1) year after the initial transaction, a repossession agency—acting on behalf of others who have no right to the minivan—trespassed on Plaintiffs'

1

land to take the minivan, refused to leave upon being instructed to do so, and summoned law enforcement to assist with the theft of the minivan. The repossession agency ultimately stole Plaintiffs' vehicle and refused to give it back. These actions violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* and other laws.

4.       The repo man called and summoned the Aston Township Police. But, upon arriving on the scene, rather than instruct the repo man to abandon the repo attempt and pursue a proper civil action if required, the officers unlawfully assisted the private seizure of Plaintiff's personal property. Video from the encounter shows the officers and repo agents escalating a volatile situation in addition to threatening Plaintiff with arrest and insisting that the repo agents are leaving with the vehicle whether Plaintiff likes it or not, one way or another.

5.       One of the Police Officers on the scene of the illegal repossession voiced that the situation was "didn't feel right" which made him visibly uncomfortable, but that they needed to follow orders from their supervisor. The Officer stated that the decision made was final, the Plaintiffs needed to handover the vehicle, and suggested to the Plaintiffs that they likely would have a successful lawsuit based on what he saw take place. Plaintiff then asked the Police Officer if his body camera was on and recording to which he confirmed it was. [1]

6.       Under settled Third Circuit precedent, a police officer acting under color of state law may not assist a private party's civil taking or repossession absent an order issued by a court.

7.       Nonetheless, Aston Township police officers—acting independently and at the

---

[1] Plaintiffs have sent multiple letters and requests for copies of the body camera footage to the Aston Township Police Department, but as of this date they have refused to release anything. They also initially resisted releasing the police report stating that the Chief specifically ordered it to be held and only he could give the OK for it to be provided. Eventually the Chief allowed its release after delaying it. It was clear that the report was an intentionally watered-down version of events to minimize any liability for actions they admitted and knew to be wrong involving their assistance in the illegal repo.

instruction of a Delaware County prosecutor—threatened to arrest Plaintiff Francis Battista unless he allowed the repossession to go forward.

8.    The police had no legal authority whatsoever to take sides in this private civil dispute, nor to demand that Plaintiffs surrender their minivan. The police's actions in this case constitute a violation of Plaintiffs' clearly established civil rights, unlawfully assisting and facilitating under color of state authority the unreasonable deprivation of Plaintiffs' property rights without due process of law under the Fourth and Fourteenth Amendments. 42 U.S.C. § 1983.

9.    This case exemplifies a custom or policy of the County of Delaware unlawfully taking the side of the repossession agency in private civil repossessions effected without a court order.  While our police are expected to keep the peace, they may not sit in judgment in their own "curbside courtroom" and help a publicly traded company (Carvana) or some foreign corporate entity debt collector (Bridgecrest or Advanced) instead of its tax paying residents.

10.    This case also showcases a standard operating procedure of Carvana and Bridgecrest to avoid utilizing the legal system and put corporate profit above the law, constitutional rights and due process.  This operating procedure is clear from the internal emails shared by co-defendant Advanced that Carvana and Bridgecrest operate by their own set of rules and laws when it comes to contract disputes.

11.    Plaintiffs seek damages for the illegal taking of their vehicle and for distress suffered as a result of Defendants' actions.  Plaintiffs also seek prospective injunctive relief directing the County of Delaware, its employees, and the Aston Township Police Department to establish and implement policies or procedures for its officers and attorneys to refrain from assisting lenders repo agents to seize personal property over a private civil dispute unless the

secured or unsecured party has obtained a court order or comparable writ.

II.     **JURISDICTION**

12.     This Court has jurisdiction under the Fair Debt Collection Processes Act ("FDCPA"), 15 U.S.C. § 1692k(d), the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1331, 1337.

13.     The Court has supplemental jurisdiction over the state law claims arising out of the same nucleus of operative facts which give rise to the federal law claims. 28 U.S.C. § 1367.

14.     Venue is proper in the District of New Jersey because Defendants Advanced and Carvana are believed to reside in this District and the minivan is believed to still be located in this District.

III.    **PARTIES**

15.     Plaintiff Francis Battista ("Mr. Battista") is an adult who resides in Aston, PA.

16.     Plaintiff Crystal Battista ("Mrs. Battista") is an adult who resides in Aston, PA.

17.     At all times relevant, Plaintiffs were a married couple.

18.     Advanced Financial Service LLC ("Advanced") is a New Jersey limited liability company, with a principal place of business at 957 Sicklerville Road, Sicklerville, NJ 08081. Advanced is in the business of repossessing vehicles pursuant to security interests.  Advanced and its agents who actually effected the repossession are collectively referred to here as the "repossession agency."

19.     Bridgecrest Credit Company, LLC ("Bridgecrest") is an Arizona limited liability company with a principal place of business at 7300 E Hampton Ave, Suite 101, Mesa, AZ 85209.  Bridgecrest is in the business of financing the purchase or sale of motor vehicles.

20.     Carvana, LLC ("Carvana") is an Arizona limited liability company with a

4

principal place of business at 600 Creek Road, Delanco, NJ 08075. Carvana is in the business of selling motor vehicles.

21.     Defendant County of Delaware is a municipal subdivision of the Commonwealth of Pennsylvania that provides law enforcement services.  The County of Delaware has an address at 201 West Front Street, Media, PA 19063.

22.     Defendant Michael Hill is an Assistant District Attorney for the County of Delaware, with a regular place of business at 201 W. Front Street, Media, Pennsylvania 19063.

23.     Defendant Mark Michaels is an Aston Township Police officer, an adult individual with a regular place of business c/o the Aston Township Police Department, at 1 New Road, Aston, PA 19014.

24.     Defendant Dennis Killian is an Aston Township Senior Police officer, an adult individual with a regular place of business c/o the Aston Township Police Department, at 1 New Road, Aston, PA 19014.

25.     Defendant Michael Wiley is an Aston Township Police officer, an adult individual with a regular place of business c/o the Aston Township Police Department, at 1 New Road, Aston, PA 19014.

26.     Defendant John Doe Police Officers 1-5 are Aston Township Police officers involved in the incident in question.  (At times, Michaels, Killian, Wiley, and John Doe Police officers are referred to collectively as the "defendant officers").

**STATEMENT OF CLAIM**

27.     On May 21, 2020, Plaintiffs purchased a used 2018 Honda Odyssey ("minivan") for primarily personal, family, and business use from Defendant Carvana.  A copy of the Retail Purchase Agreement is attached as Exhibit "A" of this amended complaint.

28.     Although the buyer and title owner is Mrs. Battista, Plaintiffs share the minivan and consider it to be marital property.

29.     In addition to the down payment authorized and made to Carvana, On May 21, 2020, the Plaintiffs traded in their Cadillac vehicle as part of the transaction.

30.     Carvana now has two vehicles of Plaintiff's in its possession, and after multiple requests, has not returned either as of the date of this amended complaint.

31.     Carvana and its digital payment authentication partner "Plaid" verified that the funds were in the Plaintiffs account before, during, and after the transaction. [2]

32.     Carvana had 24-7 access to Plaintiffs accounts, via its API interface with Plaid, which provided a real time available balance and full transparency into Plaintiffs financial status.

33.      Plaintiff gave explicit written and verbal permission to Carvana via an authorized link directly to its checking account to securely process the down payment well in advance of the delivery date of the purchased vehicle.

34.     Carvana initiated the ACH payment from Plaintiffs account prior to the delivery and again in late May.

35.     Plaintiff has maintained more than sufficient funds in the BB&T bank account from which payment was processed from prior to the transaction, during the transaction, and through the date of this amended complaint being filed.

36.     The bank account associated with the purchase is still open and was never closed from the time of the transaction up until the date of this amended complaint.

37.     On May 23, 2020, after receiving a mobile fraud alert believed to be associated

---

[2] **See Carvana's FAQ's about its preferred method for linking bank account and processing payment with Plaid: https://www.carvana.com/help/payment-and-financing/using-account-number-vs-linking-bank-account-with-plaid).**

with the Carvana payment, Plaintiff proactively reached out to Carvana to ensure that if there were any issues they could be resolved promptly.

38.    Plaintiff also offered an alternative means of payment in good faith from a separate bank account in case there was any issue.

39.    Later in the morning of May 23, 2020, Carvana memorialized the conversation with Plaintiff via an email and stated that they appreciated the offer but were unable to accept any additional payment toward the purchase at that time. **(See Exhibit "B")**

40.    On May 27, 2020, Plaintiff received another email from Carvana stating that processing or reprocessing of the payment could take 3-5 days to clear, and once funding has cleared, all email correspondence would cease.

41.    Carvana went on to state that if after five (5) days they were not in contact with Plaintiff then the payment was fully processed correctly. **(See Exhibit "C")**

42.    The only communications that came from Carvana after the five (5) day period were emails on July 8, 2020, stating that "Your registration has been processed!"

43.    Defendant Carvana stated in the July 8, 2020, email that Plaintiff would receive the vehicle title and plates in 5-7 business days and supplied info detailing how registration would be delayed, the possible need to drive with expired temporary tags, and provided instructions on how to self-register your car if needed. **(See Exhibit "D")**.

44.    Carvana then issued the vehicle title on July 10, 2020, via first class mail and the tags via FedEx to the Plaintiffs.  **(See Exhibit "E")**

45.    Unfortunately, the Plaintiffs where not home to receive and sign for the FedEx package but weeks later did contact Carvana to inquire about resending the tags and title.

46.    Carvana then sent or requested the title be issued to Plaintiff so that the vehicle

could be registered and legally driven as the temporary tags were expired for months.

47.    The last written communication from Defendant Carvana came on October 28, 2020, stating "Congratulations! We hope you are enjoying your new car." **(See Exhibit "F")**

48.    Defendant Carvana never once sent any notice of default, breach of contract, notice to cure, or any type of legal notice regarding the purchase via USPS Mail, UPS, FedEx or service of process via a process server or Sheriff on Plaintiff.

**The Repo Man Trespasses and Refuses to leave despite the Plaintiffs Objections**

49.    At about 1:00 a.m. on Friday May 28, 2021, Mr. and Mrs. Battista were awoken by the sound of a loud truck pulling up in front of their house and idling.

50.    Mr. Battista immediately went outside and observed a tow truck backing up into his driveway, where the family minivan was parked on his private property, filled with luggage for a family vacation, three children's car seats, and various personal items.

51.    The tow truck had two occupants, both agents of the repossession agency Advanced. They informed Mr. Battista that the minivan was being repossessed by Bridgecrest whom it was stated is a client of the tow company.

52.    Mr. Battista objected, advising the agents for Advanced that Plaintiffs had title to the minivan, there was no bank, nor any loan with any Bridgecrest creditor, and that the agents were trespassing and disturbing the peace and ordered them to leave immediately.

53.    Neither Advanced, Bridgecrest, nor anyone else had sought or obtained a valid court order or similar writ to seize Plaintiffs' minivan.

54.    Nonetheless, the agents for Advanced proceeded to attempt to forcibly take the minivan, threatening Mr. Battista that if he doesn't move out of the way of the tow lift that they "had something for him inside the truck that would make him move." The one agent then

forcibly maneuvered the tow lift striking Mr. Battista in the right leg.

### *The Aston Township Police Arrive and Assist with the Theft*

55.     One of the agents for Advanced telephoned the police when they were not able to hook up the van onto their truck due to Mr. Battista's objections and demands they leave his property.

56.     Within minutes, Aston Township police officers arrived at the scene—the Battista's home.  The police officers included Defendants John Does 1-5.

57.     At all times relevant hereto, the police officers were acting under color of state law as agents of the Aston Township police department and the County of Delaware.

58.     Mr. Battista told the police that Plaintiffs had clear title to the minivan inside the house, retrieved and showed the police the clear title evidencing that there was no bank or creditor, no lienholder, no court order or judgment, that Plaintiffs owned the minivan, and that the agents for Advanced were trespassing on Plaintiffs' property.

59.     Rather than directing the agents for Advanced to leave Plaintiffs' property, the police officers, and state actors including the Assistant District Attorney Hill, assisted the repo man in his illegal taking by threatening to arrest Mr. Battista unless he allowed the theft to go forward.

60.     The police officers stated they did not care if he had clear title and since the repo agent had an order to take it and that's what was going to happen.

61.     Bridgecrest's repo order was fraudulent and misleading as it listed themselves as a lienholder when they certainly were not. **(See Exhibit "G")**

62.     Mr. Battista again objected to the repo and informed the police they needed to remove the trespassing repo agents and their tow truck off his property as they were disturbing

the peace and scaring his small children who were feet away.

63.    The police officers knew at the time that there was no court order or writ for the repossession or seizure of the minivan and the repo agent confirmed that they had no such court order. The agent even ran a check on their computer stating to the police that there was no lien and the title was "legit" and they weren't sure how to proceed.

64.    The police officers also knew that Plaintiffs had full and clear title to the minivan, as Plaintiffs showed the police officers the title, which has no lien listed on it.

65.    The Aston Township police officers were emphatically informed by Mr. Battista that they had no right to be working on behalf of a bank or creditor in any matter against a private citizen. Mr. Battista also stated that the police officers were attempting to threaten and intimidate him to relinquish his constitutionally protected rights and property.

66.    Ms. Battista then came outside as she was concerned that the encounter was turning dangerous as Police continued to yell at Mr. Battista and threaten to arrest him if he didn't stop interfering with the illegal repossession.

67.    One of the police officers then stepped aside to make a telephone call.  On information and belief, the police officers spoke with Assistant District Attorney Michael Hill.

68.    The police officers returned from the phone call and told Plaintiffs that the Assistant DA had advised them to allow the repossession to go forward and to inform Mr. Battista that it is the law and their policy, and that he needs to hand over the vehicle and stop interfering or face arrest.

69.    Out of an extreme abundance of caution since the Plaintiff's three (3) small daughters were just feet away, and fearing the police would further escalate the situation with violence due to their tone and aggressive posture, Mr. Battista allowed the repo company to put

10

the minivan onto the tow truck lift and exit the property with their illegal repo.[3]

70.     Mr. Battista stated and reiterated to the officers that they were violating his constitutional rights and they should educate themselves and Assistant District Attorney Hill on the illegal and unlawful orders he gave them.

71.     The Aston police officers had no legal authority to direct and coerce Plaintiffs to surrender their minivan, work on behalf of or become an agent of Carvana, Bridgecrest, or Advanced.  Nor did the officers have legal authority or right to threaten arrest or threaten the physical removal of Mr. Battista from his private property.

72.     The limitation on a police officer's ability to assist in an *ex parte* seizure of personal property – without due process or court order – is of constitutional dimensions, and is well-settled in the Third Circuit.  *See, e.g.*, *Hyman v. Cap. One Auto Fin.*, 826 F. App'x 244, 246 (3d Cir. 2020).

73.     With the assistance of the Defendant police officers on the scene, who threatened to arrest Mr. Battista pursuant to the instruction of the Assistant District Attorney, the agents and trespassers for Advanced took possession of the vehicle and drove away with it.

74.     None of the police officers on the scene investigated the threat of violence by the repo agent after being informed of such, nor did they warn the repo agents that they were trespassing on Plaintiffs' property, and the police officers would not allow Plaintiffs to initiate a criminal complaint at the scene.

75.     Instead, the defendant police officers allowed the agents for Advanced and their

---

[3] One of the defendant officers made a remark/warning that because of Mr. Battista's size and stature that they would need to detain or place handcuffs on him for everyone's safety and protection until the repo was completed. Mr. Battista was visibly frustrated after being told that Assistant District Attorney Hill ordered the officers to continue unlawfully assisting the repo company in their illegal seizure. Being handcuffed or threatened with arrest for exercising your Constitutionally protected rights on your own property would/should make any American Citizen visibly upset. To de-escalate the situation Mr. Battista walked inside the house to avoid arrest or any further interaction with the police assisted illegal repossession.

tow truck to remain on Plaintiffs' premises in spite of Mr. and Ms. Battista's multiple requests to remove these trespassers and stop them from disturbing the peace on their property.

76.     Defendant police officers took no action to stop the continued trespass, took no action to investigate the threat of violence against Mr. Battista by the repo agents, and instead lent their assistance and that of the County of Delaware Assistant District Attorney Hill, to Advanced and its unlawful taking of Plaintiffs' minivan.

77.     The defendant police officers made the clear and conscious choice to work on behalf of a publicly traded company and foreign corporation instead of its tax paying residents.

78.     At all times relevant hereto, the defendant police officers were vested with and utilized the power and authority of the state when they assisted with the theft of the minivan.

79.     The agents for Advanced acted in concert with the Aston Township police officers to take possession of Plaintiffs' vehicle.

80.     The County of Delaware and the defendant police officers acted in derogation of Plaintiffs' rights guaranteed by the states through the 14th Amendment and 4th Amendment to be free of unreasonable seizures, to be free from deprivation of her property without due process of law, and to notice and an opportunity to be heard.

81.     Those rights are well established under controlling authority from the United States Supreme Court, *see Soldal v. Cook County*, 506 U.S. 56 (1992), and the United States Court of Appeals for the Third Circuit, in *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998), and *Harvey v. Plains Twp. Police Dept.*, 421 F.3d 185 (3d Cir. 2005).

**_Background Facts Concerning the County of Delaware and Aston Township_**

82.     Upon information and belief, the Aston Township police department requires training for all of its officers.

83.    Upon information and belief, in the course of this training, Aston Township police officers are given on the job situational training to resolve common situations.

84.    Upon information and belief, this includes training concerning repossessions and department procedures.

85.    Upon information and belief, as part of that training, police officers are advised to routinely assist repossession/tow companies with the repossession of vehicles.

86.    Upon information and belief, as part of that training, police officers are not trained to refrain from assisting repossession companies with the *ex parte* taking of vehicles.

87.    Upon information and belief, as part of that training, police officers are not trained to distinguish between a judicially authorized repossession and a private, civil, self-help repossession.

88.    On information and belief, it is the policy and/or custom of the County of Delaware to provide aid and assistance in the taking or repossession of vehicles without a court order.

89.    On information and belief, this policy and/or custom is enforced by the Delaware County District Attorney's Office, and was enforced here by Assistant District Attorney Michael Hill, who aided in the taking of the minivan by instructing the police officers at the scene that the repossession may go forward.

90.    Upon information and belief, Aston Township police officers, as a matter of practice, implement this custom and regularly provide assistance to repossession agencies.

91.    Upon information and belief, the actions of the defendant police officers were consistent with the customs and authorized practices of the Aston Township Police Department.

92.    Upon information and belief, the practices described above, while they may not

be memorialized in any formal document, are well-settled customs within the Aston Township Police Department.

93.    The presence of armed police officers who direct consumers such as Plaintiffs to turn over vehicles to facilitate disputed private civil repossessions all but assures the repossession of vehicles from consumers, even those consumers who own the vehicle outright.

94.    Defendant County of Delaware is officially responsible for ensuring that its police officers are trained not to interfere or take sides in civil repossessions.

***Damage to Plaintiffs***

95.    As a result of each Defendant's conduct, Plaintiffs lost their primary mode of familial transportation and suffered pecuniary loss, mental and emotional distress, aggravation, stress, worry, humiliation, and embarrassment.

96.    Plaintiffs also expended significant time, money, and effort trying to address the wrongful taking of their minivan.

97.    Plaintiffs had to cancel a planned family vacation and incurred expenses for alternate modes of transportation since the illegal repo took place.

## COUNT I
## CIVIL RIGHTS VIOLATION, 42 U.S.C. § 1983
### (Against the County of Delaware, Michael Hill and John Doe Police Officers 1-5 in their official capacities)

98.    Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

99.    On information and belief, the County of Delaware has a policy or custom of law enforcement officers providing aid and assistance in the repossession or taking of vehicles where there is no court order authorizing the taking.

14

100.    On information and belief, the County of Delaware fails to train its law enforcement officers that they may not provide aid or assistance in the repossession or taking of vehicles where there is no court order authorizing the taking.

101.    As a direct and proximate result of the County of Delaware's policy, custom, and failure to train, Plaintiffs were unreasonably deprived of their personal property without due process of law, without notice and an opportunity to be heard.

102.    The minivan would not have been taken but for the presence and active assistance of the police, who threatened to arrest Mr. Battista.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for the following:

a)  Prospective injunctive relief directing the Defendants to establish and implement, policies, procedures and/or customs for the County of Delaware and its law enforcement officers to refrain from assisting in civil repossessions without a court order;

b)  Any attorney or legal fees as provided for pursuant to 42 U.S.C. § 1988; and

c)  Such other and further relief as the Court shall deem just and proper.

### COUNT II
### CIVIL RIGHTS VIOLATION, 42 U.S.C. § 1983
**(Against Michael Hill, Mark Michaels, Dennis Killian, Michael Wiley, and John Does 1-5, in their individual capacities)**

103.    Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

104.    Advanced, through its agents, servants, or employees, acted jointly and in concert with Defendants Michaels, Killian, Wiley, Hill, and John Does 1-5 to deprive Plaintiffs of their

rights under the United States Constitution and state law.

105.     As a result of the unlawful, reckless and indifferent acts or omissions of Defendants Michaels, Killian, Wiley, Hill, and John Does 1-5, Plaintiffs were deprived of their clearly established rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 U.S.C. § 1983.

106.     As a direct and proximate result of the conduct of the Defendants Michaels, Killian, Wiley, Hill, and John Does 1-5, Plaintiffs were deprived of their personal property without due process of law, without notice and an opportunity to be heard in violation of their clearly established constitutional rights.

107.     Defendants Michaels, Killian, Wiley, Hill, and John Does 1-5 knew or should have known, as would any reasonable person, that they were aiding and assisting in depriving Plaintiffs of their personal property without due process of law, without notice and an opportunity to be heard, in violation of their clearly established constitutional rights.

108.     Defendants Michaels, Killian, Wiley, Hill, and John Does 1-5 were instrumental in the taking of Plaintiffs' minivan, including Hill's instruction to aid in the repossession, and the police officers' threats of arrest intended to aid the taking of the minivan.

109.     As a result, Plaintiffs has suffered damages resulting from these violations of their civil rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Michaels, Killian, Wiley, Hill, and John Does 1-5 in their individual capacities, for the following:

a)   Damages;

b)   Any attorney or legal fees as provided for pursuant to 42 U.S.C. § 1988; and

c)   Such other and further relief as the Court shall deem just and proper.

## COUNT III
## FAIR DEBT COLLECTION PRACTICES ACT
### (Against Advanced Financial Services, LLC)

110.    Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

111.    Defendant Advanced was acting as a "debt collector" as that term is defined under 15 U.S.C. § 1692a(6).

112.    The FDCPA prohibits a debt collector from engaging in unfair or unconscionable means to collect or attempt to collect a debt, including taking any non-judicial action to effect dispossession or disablement of property when there is no present right to do so. 15 U.S.C. § 1692f(6).

113.    Defendant Advanced repossessed Plaintiffs' minivan when it had no lawful present right to do so.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Advanced Financial Services for the following:

a)  Nominal damages;

b)  Compensatory damages;

c)  Punitive damages;

d)  Any attorney or legal fees as provided for pursuant to 42 U.S.C. § 1988; and

e)  Such other and further relief as the Court shall deem just and proper.

## COUNT IV
## CONVERSION/TRESPASS TO CHATTELS
**(Against Advanced Financial Service, Bridgecrest Credit Company, and Carvana)**

114.    Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

115.    Defendants and/or their agents wrongfully repossessed Plaintiffs' minivan, and deprived Plaintiffs of their minivan. **(See Exhibit "H")**

116.    Defendants and/or their agents took Plaintiffs' vehicle without their consent, without lawful justification, and without a lawful right to possession.

117.    Defendants and/or their agents trespassed on Plaintiffs' property in order to repossess the vehicle and breached the peace.

118.    As a result of Defendants' intentional, willful and reckless conduct, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Advanced Financial Service, Bridgecrest Credit Company, and Carvana for the following:

a)  Nominal damages;

b)  Compensatory damages;

c)  Punitive damages;

d)  Any attorney or legal fees as provided for pursuant to 42 U.S.C. § 1988; and

e)  Such other and further relief as the Court shall deem just and proper.

## COUNT V
## TRESPASS
**(Against Advanced Financial Service, Bridgecrest Credit Company, and Carvana)**

119.    Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

120.    Defendants and/or their agents intentionally intruded upon Plaintiffs' property to take the minivan.

121.    Defendants and/or their agents refused to leave Plaintiffs' property despite Plaintiffs' instructions and objections.

122.    As a result of Defendants' intentional, willful, and reckless conduct, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Advanced Financial Service, Bridgecrest Credit Company, and Carvana for the following:

      f)   Nominal damages;

      g)   Compensatory damages;

      h)   Punitive damages;

      i)   Any attorney or legal fees as provided for pursuant to 42 U.S.C. § 1988; and

      j)   Such other and further relief as the Court shall deem just and proper.

## COUNT VI
## CONSUMER FRAUD ACT
**(Against Advanced Financial Service, Bridgecrest Credit Company, and Carvana)**

123.    Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

124.    Defendants and the subject transactions at issue in this case are subject to the

Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 et seq. and its implementing regulations.

125.    The CFA prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]" N.J.S.A. 56:8-2.

126.    At all times relevant, Defendants claim to have been acting pursuant to contractual duties relating to the minivan, which may include the Retail Sale Agreement.  In the performance of said duties, Defendants engaged in unconscionable commercial practices.

127.    Defendants' ordering of the wrongful taking and retention of the minivan is an unconscionable commercial practice that violates the CFA, N.J.S.A. 56:8-2. **(See Exhibit "H")**

128.    As a result of Defendants' unlawful conduct, Plaintiffs suffered ascertainable losses.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Advanced Financial Service, Bridgecrest Credit Company, and Carvana for the following:

a)  Nominal damages;

b)  Compensatory damages;

c)  Punitive damages;

d)  Treble damages;

e)  Any attorney or legal fees as provided for pursuant to 42 U.S.C. § 1988; and

f)  Such other and further relief as the Court shall deem just and proper.

**COUNT VII**
**FRAUDULENT MISREPRESNTATION**
**(Against Bridgecrest Credit Company)**

129.    Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

130.    In connection with the repo order given to Advanced, Defendant Bridgecrest made misrepresentations and/or omissions concerning that they were a lienholder against Plaintiffs vehicle when in fact they were not.

131.    The misrepresentations or omissions were material to the repossession and illegal taking of Plaintiffs property.

132.    Defendant Bridgecrest made these misrepresentations and/or omissions with the knowledge and/or belief that they were false.

133.    Defendant Bridgecrest made these misrepresentations and/or omissions with the intention that Advanced or co-defendants would rely upon them in order to effectuate an illegal repossession without having to get a legal court order or writ to gain possession of the minivan.

134.    Plaintiffs and/or other Defendants reliance upon the misrepresentations and/or omissions of Bridgecrest was reasonable.

135.    Plaintiff has suffered damages as a result of this fraud, including but not limited to, alternate transportation costs, vacation cancellation cost, and any attorney fees or court costs incurred.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Bridgecrest Credit Company for the following:

a)  Nominal damages;

b) Compensatory damages;

c) Punitive damages;

d) Any attorney or legal fees as provided for pursuant to 42 U.S.C. § 1988; and

e) Such other and further relief as the Court shall deem just and proper.

## COUNT VIII
## CIVIL CONSPIRACY
**(Against Advanced Financial Service, Bridgecrest Credit Company, and Carvana)**

136.    Plaintiffs repeat the allegations contained above as if the same were here set forth at length.

137.    Defendants Advanced, Bridgecrest, and Carvana entered into an agreement to unlawfully exercise dominion and control over Plaintiffs property, a vehicle which Defendants had no right to repossess.

138.    In furtherance of this agreement, upon information and belief, Defendants Advanced, Bridgecrest, and Carvana ignored and failed to respond to several communications and requests to return the vehicle and the Plaintiffs personal property located inside of it.

139.    In furtherance of this agreement, Defendants Advanced, Bridgecrest, and Carvana never sent any legal notice of the repossession, default, or breach of contract, before or after the illegal repossession occurred.  There was no notice on where to recover the vehicle, its contents, or any other notice of breach, default, or an opportunity to cure any supposed default.

140.    As a result of Defendant Advanced, Bridgecrest, and Carvana's conspiracy, Plaintiff suffered damages including but not limited to, fees and costs incurred in the Minivan transaction; fees and costs incurred in the repossession of the Minivan; past or future repairs or reconditioning of the Minivan and Cadillac; and possible diminished value of the Minivan and

Cadillac from May 21, 2020, to the present; and attorney fees and costs.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Advanced Financial Service, Bridgecrest Credit Company, and Carvana for the following:

a) Nominal damages;

b) Compensatory damages;

c) Punitive damages;

d) Any attorney or legal fees as provided for pursuant to 42 U.S.C. § 1988; and

e) Such other and further relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues so triable.

Respectfully submitted:

Date:  5-13-2022                                       */s/ Francis Battista*
                                                       FRANCIS BATTISTA
                                                       Pro Se Plaintiff

Date:  5-13-2022                                       */s/ Crystal Battista*
                                                       CRYSTAL BATTISTA
                                                       Pro Se Plaintiff